**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **ROBERT WAINSCOTT,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 7:04-CV-0176-BH |
| | § | |
| **COMMISSIONER OF SOCIAL SECURITY,** | § | |
| | § | |
| | § | |
| Defendant. | § | Consent Case |

**MEMORANDUM OPINION AND ORDER**

Pursuant to the District Court's *Order*, filed February 10, 2005, and the consent of the parties, this matter has been transferred to the undersigned United States Magistrate Judge for the conduct of all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c). Before the Court are *Brief for Plaintiff*, filed January 5, 2005, and *Defendant's Motion for Summary Judgment* and *Brief in Support of Motion for Summary Judgment*, both filed February 22, 2005. Plaintiff did not file a reply. Having reviewed the evidence of the parties in connection with the pleadings, the undersigned is of the opinion that the final decision of the Commissioner should be **AFFIRMED**.

**I. BACKGROUND**

*A.    Procedural History*

Robert S. Wainscott ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his claim for disability benefits under Titles II and XVI of the Social Security Act. On July 25, 2001, Plaintiff filed an application for disability benefits. (Tr. at 71-73.) Plaintiff claimed he was disabled due to diabetes and neuropathy, specifically stating that he could not walk without a cane, lift more than 10 pounds, or stand, and

that his impairments caused him pain. (Tr. at 81.) Plaintiff's application was denied initially and upon reconsideration. (Tr. at 44-45.) Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 60.) A hearing, at which Plaintiff personally appeared and testified, was held on October 23, 2003. (Tr. at 165-193.) On December 8, 2003, the ALJ issued his decision finding Plaintiff was not disabled. (Tr. at 34-41.) The Appeals Council denied Plaintiff's request for review, concluding that the contentions raised in Plaintiff's request for review did not provide a basis for changing the ALJ's decision. (Tr. 3-5.) Thus, the ALJ's decision became the final decision of the Commissioner. (Tr. at 3.) Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. S 405(g) on September 29, 2004.

### B.     *Factual History*

####     1.     Age, Education, and Work Experience

Plaintiff was born on March 11, 1965. (Tr. at 168.) At the time of the hearing before the ALJ, he was 38 years old. (Tr. at 169.) He graduated from high school, attended a few years of college without receiving a degree, and possessed a Texas real estate license. *Id*. His past relevant work experience included working in production and as a laundry manager. (Tr. at 170-71.) Plaintiff's last known job was sometime in the calendar year prior to the hearing in 2003, but no dates were given. (Tr. at 102, 173.)

####     2.     Medical Evidence

Plaintiff's alleged onset of disability is on November 21, 1999. (Tr. at 90.) The medical evidence in the record begins two years later, on May 24, 2001. (Tr. at 135.) Plaintiff visited Dr. Karina Urquia ("Dr. Urquia") and complained of numbness in both of his feet and weakness in both of his lower extremities which he first noticed about March 26, 2001. (Tr. at 134-35.) Dr. Urquia described Plaintiff as having insulin-dependent diabetes mellitus for the past nine years, which was

being treated by Dr. Atluri.[1] (Tr. at 135.) Dr. Urquia noted that Plaintiff had begun using crutches in the four weeks prior to that visit. *Id*. Plaintiff told Dr. Urquia that he visited another physician, Dr. Harbor, and had been prescribed some medication which did not improve his symptoms, including Amitriptyline and NPH insulin at bedtime as well as Humalog.[2] *Id*. Dr. Urquia recommended continue on NPH insulin and Amitriptyline. (Tr. at 134.) Dr. Urquia noted that Plaintiff's average blood sugar was about 379 and his medical history included surgery on his right ankle. *Id*. The examination of Plaintiff showed difficulty in ambulation secondary to weakness of his lower extremities. *Id*. No edema was noted in the extremities, but strength in the lower extremities was listed as 3/5. *Id*. Plaintiff showed normal sensation to hot, cold, soft, and painful stimuli as well as normal reflexes. *Id*. Dr. Urquia noted weakness in dorsiflexion and plantar flexion, more so on the left than the right. *Id*. Additionally, when asked to ambulate, Plaintiff exhibited a drop foot on the left.[3] *Id*.

On July 18, 2001, Plaintiff visited Dr. Urquia again, who noted that he seemed to be walking better but still exhibited drop foot on the left. (Tr. at 133.) Dr. Urquia prescribed Neurontin to help with neuropathy symptoms. (Tr. at 132.) Dr. Urquia also referred Plaintiff to Dr. Jaime C. Lim, for evaluation of leg weakness and foot drop. *Id*.

Dr. Lim examined Plaintiff on July 19, 2001, and took note of bilateral foot drop but otherwise normal strength. (Tr. at 109.) He also noted that Plaintiff's walking was somewhat unsteady, but that he was able to walk without assistive devices. *Id.* On a separate visit on August 3, 2001, Dr. Lim noted degenerative disc disease. (Tr. at 105.)

---

[1] There are no medical records provided from Dr. Alturi.
[2] Files from Dr. Harbor were not included in the record.
[3] A drop foot or "footdrop" is a dropping of the foot from a peroneal or tibial nerve lesion that causes paralysis of the anterior muscles of the leg. *Dorland's Illustrated Medical Dictionary*, 648, W.B. Saunders Company (28th ed. 1994). The effect can be a "steppage gait" in which the advancing leg is lifted high in order that the toes may clear the ground. *Id*. at 671.

3

On August 13, 2001, Plaintiff received treatment from Dr. Urquia, who reported that Plaintiff had become increasingly anxious and depressed and unable to follow his insulin regimen. (Tr. at 131.) Dr. Urquia was trying to get Plaintiff an appointment with Dr. Shaffer, a pain management specialist, but had not yet been successful. *Id*.

Plaintiff met with Dr. Sundaresan, a neurosurgeon, on September 4, 2001. (Tr. at 110.) Dr. Sundaresan reported that Plaintiff was neurologically intact and that although he had a displaced and degenerative disc in his back, he was asymptomatic to the disc at this point. *Id*. Dr. Sundaresan added that if the disc were to become symptomatic, the Plaintiff would become a candidate for surgery. *Id*. On September 5, 2001, Dr. Urquia reported that Dr. Sundaresan did not want to operate on Plaintiff because he felt that Plaintiff's back was not the problem, but that ineffective blood-sugar management was the problem. (Tr. at 129.) Dr. Urquia referred Plaintiff to a diabetes education clinic to discuss insulin pumps. (Tr. at 128.)

On October 5, 2001, Plaintiff reported to Dr. Urquia that he could not tolerate his blood sugar level falling below 200 without feeling hypoglycemic. (Tr. at 127.) Also, Plaintiff's phone had been disconnected, so he was experiencing difficulty in scheduling appointments with the diabetes education center to which he had been referred. *Id*. Plaintiff was continuing physical therapy at home and noticed significantly improved strength in his lower extremities. *Id*. Dr. Urquia noted improved strength as 4/5 in lower extremities, and that Plaintiff's left foot was weak but showed no signs of drop foot as before. *Id*.

The only evidence of Plaintiff seeking treatment for his depression in the record is from a visit to Dr. Harvey C. Martin, M.D. (Tr. at 104.) In what was listed as a fifteen minute appointment on March 15, 2000, Dr. Martin concluded that Plaintiff was subdued and depressed but remained resistant to the idea of taking antidepressant medication. *Id*. Although Dr. Martin mentioned that

4

they were to meet again in two months time, there are no records to show any subsequent visits. *Id.* Dr. Urquia remarked that Plaintiff had been having difficulty at home and in his living situation with his violent alcoholic brother from August to October of 2001. (Tr. at 127-31.)

On June 21, 2002, Plaintiff called Dr. Urquia's office for a refill of a prescription. (Tr. at 142.) However, because Plaintiff had not been in the office in more than six months, the prescription could not be refilled until Dr. Urquia saw him again. *Id.*

On September 8, 2003, Plaintiff visited Hillside Family Health Clinic for another prescription refill. (Tr. at 139-141.) Plaintiff complained of leg pain, but a musculoskeletal exam was within normal limits, with no difficulties in gait noted. (Tr. at 140.) He was diagnosed with insulin dependant diabetes mellitus, diabetic neuropathy and Hepatitis C. (Tr. at 140.)

3. Hearing Testimony

A hearing was held before the ALJ on October 23, 2003. (Tr. at 165.) Plaintiff appeared personally and was represented by an attorney. (Tr. at 166.) Plaintiff testified that he was 38 years old, had graduated from high school, and had attended some college. (Tr. at 169.) Plaintiff stated that his last job was sometime prior to the hearing in 2003, and that he had to stop working because he could not receive adequate accommodations for his strength and abilities. (Tr. at 173 & 17.)[4] Plaintiff claimed that he could not lift more than 10 pounds and that he could not stand for extended periods of time. *Id.* Plaintiff testified that although he had discussed getting an insulin pump, it was not a viable option for him because he required much more insulin than the pump could handle properly. (Tr. at 178.) Plaintiff claimed to be following his diet but still had problems controlling his blood sugar, saying that he rarely was able to get it below 210. (Tr. at 178-179.)

---

[4] Page 175 of the ALJ hearing transcript is missing from the record. Lisa T. Attleson, Plaintiff's attorney, included portions of the hearing transcribed in her correspondence to the Appeals Council on June 22, 2004. Any pertinent information from page 175 was reconstructed from the transcription of the tapes of the hearing included with Ms. Attleson's correspondence.

Plaintiff testified that his diabetes made him lethargic and caused him blurry vision. (Tr. at 179.) He also stated that his doctor diagnosed him with peripheral neuropathy in his legs. *Id*. He said that his right leg was worse than the left due to a previous surgery. (Tr. at 179.)

Plaintiff stated that he had trouble walking and had drop foot in both of his feet. (Tr. at 180.) He explained that was he was unbalanced walking on uneven ground, causing him to trip and fall over, and that he could not stand in one place without shuffling or leaning on something. *Id*. He said that although he did not always need the assistance of a cane, he used one when he was not certain that the ground was level. *Id*.

Plaintiff explained that he felt only pain from the knees down, which made him feel as though he was walking on stilts. (Tr. at 181.) He reported taking pain medications regularly, but that these medications knocked him out and made him feel like he was hung-over when he awakened. *Id*. Because of this, he could not drive or operate heavy machinery. *Id*.

Plaintiff stated that he took Neurontin which helped with symptoms for a time, but he could not afford it and had to stop taking it. (Tr. at 181-82.) He said that he was unable to visit Dr. Shaffer, the pain management specialist, first due to a heavy snow and second due to a long lapse of time, making the recommendation unusable. (Tr. at 182.) Plaintiff said that his diabetes had begun affecting his arms and kidneys, and that he had open sores on his arms and face. *Id*. Because of this, he reported that he could not work in any food service business. *Id*. Plaintiff claimed he had trouble sleeping due to leg cramps and spasms. (Tr. at 183-84.) He said he could not stand for longer than 30 minutes and could not walk for more than 30 minutes without taking an hour and a half to elevate his feet above his heart to reduce swelling in his calves. (Tr. at 184.) Plaintiff also reported that he could not lift more than 10 pounds without losing his balance. (Tr. at 185.)

Plaintiff stated that he was not in counseling and that he did not have a mental or emotional

6

problem that needed to be dealt with by a professional. (Tr. at 190.)

C.  *ALJ's Findings*

The ALJ issued his decision denying benefits on December 8, 2003. (Tr. at 34-41.) In his findings, he determined that Plaintiff had not engaged in substantial gainful employment since the alleged onset date of disability. (Tr. at 36.) The ALJ determined that Plaintiff's diabetes mellitus and degenerative disc disease were severe impairments but that there was insufficient evidence to indicate that Plaintiff's depression was a severe impairment within the meaning of the regulations. (Tr. at 36, 37.) However, the ALJ concluded that Plaintiff's impairments were not severe enough to meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. at 37.) In considering whether Plaintiff's diabetes mellitus met Listing 9.08, the ALJ noted that the impairment was reported as poorly controlled due to non-compliance and that it improved with adequate treatment. *Id*. In addition, the ALJ noted that while Plaintiff did have peripheral neuropathy, his left foot drop improved with physical therapy. *Id.*

In determining Plaintiff's RFC, the ALJ found that Plaintiff's "allegations of disabling pain and discomfort are not supported by credible facts and findings from which it can be concluded that he had an impairment that could reasonably be expected to cause the degree of pain and discomfort which he alleged." (Tr. at 38.) The ALJ noted Plaintiff's relatively infrequent trips to the doctor; Plaintiff had received no treatment for a year and a half and ran out of medication one month prior to the hearing. *Id.* This occurred despite the fact that he was advised in October 2001, to get on his insulin regimen to better control his diabetes. *Id*. Further, Plaintiff had been referred for a consultative exam at agency expense but failed to keep the appointment. *Id*. The ALJ also mentioned the fact that no treating doctors gave Plaintiff any restrictions on activity. *Id*.

The ALJ concluded that Plaintiff retained the RFC to perform a limited range of light work

7

and a full range of sedentary work. (Tr. at 38.) He noted that Plaintiff's

> diabetic neuropathy affects his feet and causes some pain and weakness. Taking this into consideration, the undersigned finds the claimant retains the residual functional capacity for a limited range of light work due to his inability to stand and/or walk more than four hours in an eight-hour workday.

*Id.* The ALJ found that Plaintiff was unable to perform his past relevant work. (Tr. at 39.) Because the ALJ found Plaintiff to have no nonexertional limitations, the ALJ applied the Medical-Vocational Guidelines ("Grids") of Appendix 2, Subpart P of the Regulations and determined that they directed a finding of "not disabled." *Id.* Thus, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. *Id.*

## II. ANALYSIS

**A.**   ***Legal Standards***

　　1.　<u>Standard of Review</u>

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson*

*v. Bowen*, 864 F.2d 340, 343-344 (5th Cir. 1988).

### 2. Disability Determination

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step analysis to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during

9

the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that claimant is capable of performing other gainful employment available in the national economy. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

*B.     Issues for Review*

Plaintiff presents the following issues for review:

(1)     Whether the Plaintiff's diabetes mellitus meets the listing in 9.08A;

(1.1)   Whether the ALJ's RFC finding equals the listing;[5]

(1.2)   Whether the ALJ erred as to the credibility finding due to the failure to seek treatment;[6] and

(2)     Whether the ALJ erred by failing to consider the effects of Plaintiff's medication in determining his RFC.

*C.     Issue One: Whether Plaintiff's diabetes mellitus meets the listing in 9.08A.*

Plaintiff claims that the ALJ's finding that Plaintiff had no impairments which met a listing was not supported by substantial evidence, and that the evidence in the record supports a finding that his diabetes mellitus meets Listing 9.08A. (Pl.'s Br. at 10.)

The Listings "are descriptions of various physical and mental illnesses . . . most of which are categorized by the body system they affect." *Sullivan v. Zebley*, 493 U.S. 521, 529-30 (1990).

---

[5] Although this issue was not expressly listed as a basis for reversal, it was raised and briefed in the discussion of Issue One in Plaintiff's *Brief*. *See* Pl.'s Br. at 15. The Court therefore addresses it.

[6] This issue also was not expressly listed as a basis for reversal but was raised and briefed in Plaintiff's discussion of Issue One. *See* Pl.'s Br. at 14-15. The Court therefore addresses this issue as well.

"Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." *Id*. at 530. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Id*. (emphasis in original). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id*. (citing SSR 83-19). The criteria in the Listings are designed to be "demanding and stringent." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). This is because the Listings "were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Zebley*, 493 U.S. at 532.

The claimant bears the burden of proving that his impairments meet or equal impairments found within the Listings. *Henson v. Barnhart*, 373 F. Supp. 2d. 674, 685 (E.D. Tex. 2005) (citing *McCuller v. Barnhart*, 72 Fed. Appx. 155, 158 (5th Cir. 2003); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990); 20 C.F.R. § 404.1526(a)). If a claimant fails to meet this burden, the court must find that substantial evidence supports the ALJ's finding. *Henson*, 2005 WL 1391161, at *7 (citing *Selders*, 914 F.2d at 620). However, "[w]here the claimant's symptoms, as described by the medical evidence, appear to match those described in the Listings, the ALJ must provide an explanation as to why the claimant failed to meet or equal the Listings." *Kuleszo v. Barnhart*, 232 F.Supp.2d 44, 51-52 (W.D.N.Y. 2002) (citing *Costanzo v. Apfel,* 2000 WL 575660 at *3 (W.D.N.Y. Feb. 8, 2000)).

The ALJ found that Plaintiff had diabetes mellitus and peripheral neuropathy. (Tr. at 37.) However, the ALJ concluded that Plaintiff's diabetes mellitus did not meet Listing 9.08. (Tr. at 37.) In order to meet the Listing for diabetes under § 9.08A, a claimant must demonstrate neuropathy evidenced by *significant and persistent* disorganization of motor function in two extremities resulting in *sustained* disturbance of gross and dexterous movements, or gait and station. 20 C.F.R., Part 404, Subpart P, Appendix 1, § 9.08A. Section 11.00C notes that the assessment of a claimant's

11

motor function impairment "depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms." 20 C.F.R., Part 404, Subpart P, Appendix 1, § 11.00C. The ALJ concluded that Plaintiff's diabetes mellitus did not meet 9.08A because it was poorly controlled due to non-compliance but improved with adequate treatment, and because while Plaintiff did have peripheral neuropathy, his left foot drop improved with physical therapy. (Tr. at 37.)

Plaintiff is correct that there is evidence in the record demonstrating that he had neuropathy in both lower extremities due to diabetes mellitus. (Tr. at 133-35, 127.) However, the record also reflects that although plaintiff showed bilateral foot drop, strength was otherwise normal and improved significantly after therapy, and he was able to walk without assistive devices despite his complaints of pain and difficulty walking. (Tr. at 109, 127, 140, 180.) This evidence supports the ALJ's implicit finding that Plaintiff did not have "significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station." *See* 20 C.F.R., Part 404, Subpart P, Appendix 1, § 9.08A. Having carefully reviewed the record, the Court finds there is substantial evidence to support the ALJ's finding that Plaintiff's diabetes mellitus did not meet Listing 9.08A.

### D. Issue 1.1: Does the ALJ's RFC finding equal the listing in 9.08A?

Plaintiff argues that the ALJ's finding as to Plaintiff's RFC contradicts his conclusion that Listing 9.08A was not met. (Pl.'s Br. at 15-16.)

In setting forth Plaintiff's RFC, the ALJ stated that Plaintiff's

> diabetic neuropathy affects his feet and causes some pain and weakness. Taking this into consideration, the undersigned finds the claimant retains the residual functional capacity for a limited range of light work due to his inability to stand and/or walk more than four hours in an eight-hour workday.

12

(Tr. at 38.) Plaintiff claims that the limitation on walking and/or standing "is consistent with the presence of precisely the 'sustained disturbance of gait and station' called for by Sec. 9.08A." (Pl.'s Br. at 16.)

While Plaintiff is correct in stating that the Listings do not require a total inability to walk or stand, neither do they require a finding of disability when the impact of a claimant's neuropathy is less than disabling. While there is no doubt that Plaintiff does suffer from diabetic neuropathy which negatively impacts his ability to stand and walk for long periods, the criteria in the Listings, which create a presumption of disability, are designed to be demanding and stringent. *See Falco*, 27 F.3d at 162. The fact that Plaintiff has some difficulty standing and/or walking for more than four hours in an eight-hour day does not equate to the severity required by Listing 9.08A. For this reason, the Court finds that substantial evidence supports the conclusion that the ALJ's RFC finding did not meet Listing 9.08A.

E.     *Issue 1.2: Did the ALJ err as to credibility finding due to failure to seek treatment?*

Plaintiff asserts that the ALJ erred in finding his testimony not credible. (Pl.'s Br. At 14-15.) Specifically, Plaintiff states that the ALJ erred in relying on his lack of medical treatment and failure to attend a consultative examination. *Id.*

"Credibility determinations are generally the province of the ALJ and are entitled to deference." *Lam v. Apfel*, 2000 WL 354393, *4 (N.D. Tex. Apr. 5, 2000). Therefore, courts will reverse an ALJ's credibility determination only if it is "patently wrong." *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003). Social Security regulations instruct ALJs to conduct a seven-factor analysis when determining the credibility of a claimant's subjective complaints of pain. 20 C.F.R. § 404.1529(c)(3). The ALJ's "determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be

sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "If on [42 U.S.C.] § 405(g) review the court finds that the ALJ followed the proper procedures and considered the relevant factors, the ALJ's determination is ordinarily conclusive." *Lechner v. Barnhart*, 321 F. Supp. 2d 1015, 1027 (E.D. Wis. 2004). However, "since substantive regulations have the force and effect of law, failure to employ the seven-factor analysis when assessing credibility of subjective complaints constitutes legal error." *Parker v. Barnhart*, 431 F. Supp. 2d 665, 672 (E.D. Tex. 2006). "Such an error warrants a reversal unless harmless error analysis indicates that 'remand would be an idle and useless formality.'" *Id.* (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969)).

In this case, the ALJ provided specific reasons for his credibility determination. At issue then, is whether there is substantial evidence to support the bases upon which the ALJ relied in making the determination. The ALJ found that Plaintiff's "allegations of disabling pain and discomfort are not supported by credible facts and findings from which it can be concluded that he had an impairment that could reasonably be expected to cause the degree of pain and discomfort which he alleged." (Tr. at 38.) The ALJ noted Plaintiff's relatively infrequent trips to the doctor, including the fact that Plaintiff received no treatment for a year and a half and ran out of medication one month prior to the hearing. *Id.* Plaintiff was referred for a consultative exam at agency expense, but failed to keep the appointment. *Id*. The ALJ also mentioned the fact that no treating doctors gave Plaintiff any restrictions on activity. *Id*.

Plaintiff does not argue with the facts as set forth by the ALJ. Rather, Plaintiff notes that he provided an explanation at the hearing for his failure to see a pain management specialist and that the ALJ did not inquire as to why Plaintiff missed the appointment with the consultative examiner.

14

(Pl.'s Br. at 15.) He states that his testimony showed that during the period in which he was not receiving treatment he was incarcerated three times, could no longer afford his prescription for Neurontin, and had extremely limited financial resources. *Id.* However, Plaintiff does not allege that he had no access to basic medical care. Although Plaintiff was unable to afford to see a pain specialist, he does not explain his failure to continue basic treatment for his diabetes. Additionally, the record supports the ALJ's finding that Plaintiff's treating physicians did not place any restrictions on his activities. Because of the deference to be accorded to the ALJ's credibility determination, and because the ALJ did specify the reasons for his finding, the Court concludes that substantial evidence supports the ALJ's credibility determination.

**F.**     ***Issue Two: Did the ALJ err by failing to consider the effects of Plaintiff's medications in determining his RFC?***

Plaintiff claims that the ALJ's RFC finding is not supported by substantial evidence because he did not consider the side effects of Plaintiff's medications on his capacity to work. (Pl.'s Br. at 17.)

An individual's RFC is the most he or she can still do despite recognized limitations. 20 C.F.R. § 404.1545. "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. An ALJ may consider an individual to have no limitation or restriction with respect to a functional capacity when there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction. *Id.* An individual's RFC should be based on all of the relevant evidence in the case record, including opinions submitted by treating physicians or other acceptable medical sources. *Id.* Substantial evidence does not support an ALJ's assessment of an individual's RFC when the

15

RFC does not incorporate nonexertional impairments supported by evidence in the record. *Robinson v. Barnhart*, 248 F. Supp. 2d 607, 623 (S.D. Tex. 2003). Furthermore, an ALJ errs by failing to evaluate medication side-effects and any impact on Plaintiff's RFC when Plaintiff complains of drug side effects. *Brown v. Barnhart*, 285 F. Supp. 2d 919, 935 (S.D. Tex. 2003) (finding reversible error when the record documented several occasions where the plaintiff complained of side effects to his medical providers and the ALJ failed to address the effects of treatment on the plaintiff's RFC).

Plaintiff testified at the hearing that his medications made him sleep for twelve to fourteen hours and then gave him a hangover and dry mouth. (Tr. at 181) However, there is no indication in the record that Plaintiff addressed this with any of his physicians or that they felt that Plaintiff's medications negatively impacted his ability to go about his daily activities. (Tr. at 104-142.) A plaintiff's subjective complaints must be corroborated at least in part by objective medical testimony. *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). The ALJ in the present case had no objective medical evidence to support Plaintiff's subjective testimony. Additionally, if a claimant alleges that an ALJ erred in failing to consider the side effects of his medication, he must show some evidence that these side effects contributed to his inability to work. *Brumbelow v. Apfel,* 2001 WL 1543852, *11 (N.D. Tex. 2001). Because neither the objective medical evidence nor Plaintiff's testimony demonstrate that the side effects of Plaintiff's medication contributed to his inability to work, the Court concludes that substantial evidence supports the ALJ's implicit finding that the side effects of Plaintiff's medication did not provide a substantial negative impact on his RFC.

### III. CONCLUSION

For the foregoing reasons, *Defendant's Motion for Summary Judgment*, filed February 22, 2005, is hereby **GRANTED** and the final decision of the Commissioner is **AFFIRMED**.

**SO ORDERED**, on this 13th day of September, 2006.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE